UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | | |
|---|---|---|
| RICHARD GEORGE, | ) | |
| STEVEN LEAVITT, | ) | CASE NO. 1:13-cv-01819 |
| SANDRA LEAVITT, | ) | |
| DARRELL DALTON, | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| URBAN SETTLEMENT SERVICES d/b/a | ) | |
| URBAN LENDING SOLUTIONS, | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT URBAN LENDING'S MOTION TO DISMISS
## FIRST AMENDED CLASS ACTION COMPLAINT

Urban Settlement Services d/b/a Urban Lending Solutions ("Urban Lending"), by its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss Count I (purporting to allege violations of Racketeering Influenced and Corrupt Organization Act ("RICO")) of Plaintiffs' Amended Complaint, and in support thereof, states that:

### Compliance with Practice Standard III(F)(2)

Pursuant to this Court's practice standard, counsel for Urban Lending, conferred with Plaintiffs' counsel and advised Plaintiffs' counsel of the bases for its motion to dismiss. Plaintiff subsequently amended its complaint. Plaintiff' Amended Complaint still fails as a matter of law.

## I.    INTRODUCTION

In their Amended Complaint, Plaintiffs again attempt to plead a RICO claim against Urban Lending arising out of an alleged scheme orchestrated by Bank of America, N.A. ("BOA") to prevent delinquent borrowers from permanently modifying their mortgages under

DMEAST #17596788 v3

the federal Home Affordable Modification Program ("HAMP").  Through their baseless allegations, Plaintiffs impugn the sterling reputation of Urban Lending, one of the fastest-growing minority-owned companies in the United States and the nation's leading minority-owned mortgage solutions provider.[1]  With offices in Broomfield and Littleton, Colorado, Urban Lending employs approximately 1,500 employees, the vast majority of whom are Colorado residents.  In addition to supporting BOA's loss mitigation outreach efforts, Urban Lending provides numerous clients a variety of services, including mortgage fulfillment services, home retention solutions, appraisals and valuation services, title and settlement services, and call center services.  Yet Plaintiffs claim, in a myriad of conclusory allegations, that Urban Lending participated in an alleged modification scheme cooked up by BOA in contravention of RICO.

Plaintiffs' original Complaint failed to state a claim.  Plaintiffs' cosmetic changes to their Complaint, made after the parties' meet and confer conference, are no panacea as the Amended Complaint fails to establish: (1) involvement by Urban Lending in management or operation of an enterprise; (2) a pattern of racketeering or; (3) damages. Moreover, there is a dearth of factual allegations as to the specific representations made by Urban Lending to Plaintiffs.

In short, this matter is Plaintiffs' counsel's attempt at a second bite at the apple having thus far unsuccessfully pursued BOA in at least one prior action.  See In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation, M.D.L. No. 10-2193-RWZ (D. Mass. Sep. 4. 2013) (denying plaintiffs' motion to certify classes of borrowers who allegedly entered into trial modifications, but did not receive permanent HAMP modifications or

---

[1] Urban Lending was founded in 2002 by former Pittsburgh Steeler Charles Sanders and Elisa Sanders. Urban Lending and its principals have received numerous awards for their impressive track record. For example, Ernst and Young tabbed CEO Charles Sanders as its 2012 entrepreneur of the year. Inc. magazine also named Urban Lending to its list of the 5,000 fastest-growing private companies and named Mr. Sanders as one of the top 10 African-American entrepreneurs.

DMEAST #17596788 v3

written denials).  Urban Lending should not be caught in the cross-fire and the Amended

Complaint should be dismissed with prejudice as to Urban Lending.

## II.    FACTUAL ALLEGATIONS

Plaintiffs allege that Urban Lending was a "primary partner" in an "enterprise whose

purpose was to create a phony front whereby BOA would offer borrowers the opportunity to

receive a HAMP modification….but then reject a HAMP modification based on fraudulent

pretenses of a homeowner's non-compliance."  (ECF No. 12 at ¶79).  Plaintiffs' claim that Urban

Lending is a "primary partner" represents a remarkable about-face from their initial Complaint

where they alleged:

> BOA assigned Urban specific tasks, and structured the
> arrangement so that BOA received daily, or even hourly, updates
> on everything Urban was doing with regard to HAMP.  Urban and
> BOA interacted in a close relationship over which BOA
> maintained *strict and meticulous control*. *BOA created this close
> contractual relationship* in order to ensure that Urban would
> participate in the loan-modification scheme.

(ECF No. 1 at ¶59).

While Plaintiffs attempt to backtrack from their allegations in the initial Complaint, they

still allege that BOA controlled the alleged modification scheme.  Plaintiffs allege that "BOA

and Urban have worked in concert *under BOA's direction* and [sic] for many years to frustrate

the HAMP process and to prevent as many homeowners as possible from obtaining permanent

loan modifications that complied with HAMP."  (ECF No. 12 at ¶4).  Plaintiffs allege that BOA

"demanded" that Urban Lending reduce the number of modification requests and that BOA's

executives were "supervising" Urban Lending to ensure that the modification process would be

extended.  (ECF No. 12 at ¶¶6, 271).  In contrast, Plaintiffs fail to allege that Urban Lending

supervised or directed BOA as to any facet of the purported loan modification scheme.

Plaintiffs' allegations with respect to the named Plaintiffs also fail to specifically allege

any wrongdoing by Urban Lending. Steven and Sandra Leavitt (the "Leavitts") allegedly applied

DMEAST #17596788 v3

for a HAMP modification, and BOA allegedly failed to timely send the HAMP application. (ECF No. 12 at ¶136).  Plaintiffs claim that the Leavitts "promptly sent the documents BOA requested," (ECF No. 12 at ¶147), and mailed the completed application and financial records to "an address….actually belong[ing] to Urban, not BOA," (ECF No. 12 at ¶143).  Plaintiffs allege that "they were repeatedly told" by BOA their application was under review.  (ECF No. 12 at ¶144).  Plaintiffs allege that BOA offered a permanent loan modification which required the Leavitts to execute a second, balloon note, and that the Leavitts "sought out a BOA manager…regarding BOA documents that needed to be signed and notarized."  (ECF No. 12 at ¶155).

Plaintiffs claim that Richard George ("George") also requested a HAMP application from BOA, (ECF No. 12 at ¶164), and that "[George] called BOA several times to request a HAMP modification," (ECF No. 12 at ¶168).  Plaintiffs allege that "[George] was told over the phone by a BOA representative" to make a reduced payment.  (ECF No. 12 at ¶166).  George purportedly received an application and mailed the completed packet to an "address belong[ing] to Urban, not BOA."  (ECF No. 12 at ¶171).  Plaintiffs allege that George qualified for a trial modification and that "BOA represented that his loan would be permanently modified" if payments were timely made.  (ECF No. 12 at ¶172).  George allegedly made the trial payments "but BOA sent George a Notice of Intent to accelerate."  (ECF No. 12 at ¶177).  Plaintiffs allege that George spoke with numerous BOA case managers yet "continued to receive false and conflicting information from BOA regarding the status of their loan and any modification."  (ECF No. 12 at ¶190).

Plaintiffs claim that Darrell Dalton "called BOA and asked to be considered for a loan modification under HAMP."  (ECF No. 12 at ¶ 195).  Plaintiffs allege that BOA falsely represented that Dalton could not qualify for HAMP until the loan was delinquent.  (ECF No. 12 at ¶ 195).  Dalton allegedly "made several calls to BOA" and faxed the requisite financial records to BOA.  (ECF No. 12 at ¶ 197).  Plaintiffs allege that Dalton was "advised by a BOA

representative that no file had been opened" and that "he continued to call BOA."  (ECF No. 12 at ¶¶ 200-201).  Plaintiffs allege that "a BOA representative confirmed the documents had been received" but "Dalton began receiving calls from BOA debt collectors claiming he was behind on his mortgage."  (ECF No. 12 at ¶¶ 201-202).  BOA purportedly approved Dalton for a trial modification but then "sent Dalton a notice of intent to foreclose."  (ECF No. 12 at ¶ 208).

In an attempt to establish a predicate for their RICO claim, Plaintiffs allege that "**BOA and Urban**" used the mail, e-mail and internet to send: (1) instructions to homeowners on completing the HAMP application; (2) HAMP trial modification plans; (3) notices of missing financial records; (4) modification denials and (5) private, non-HAMP modification proposals. (ECF No. 12 at ¶¶255-257).  Plaintiffs, however, fail to allege which acts were performed by Urban Lending, much less to specify the date, place or employee that made any alleged misrepresentation.

As for their entirely new allegations of extortion, Plaintiffs claim that "Defendants unlawfully attempted to and/or did induce Plaintiffs and members of the class to part with various property interests to which Defendants would not have been entitled."  (ECF No. 12 at ¶263).  Plaintiffs allege that "Defendants' extortion of money or property took the form of demanding that Plaintiffs pay additional money to be considered for a HAMP modification." (ECF No. 12 at ¶265).  Nowhere in the Amended Complaint, however, do Plaintiffs identify the acts of Urban Lending that allegedly constitute extortion.  Plaintiffs utterly fail to differentiate which extortionate acts were committed by which defendant or explain how Urban Lending, which neither owned nor serviced their mortgage loans, could be in position to extort any money or property from them.  (ECF No. 12 at ¶¶263-268).

5

## III.    ARGUMENT

### A.    Standard On A Motion To Dismiss A RICO Claim

The Supreme Court clarified the standard for granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face."  Twombly, 550 U .S. at 570. The Supreme Court has explained that two principles underlie this standard. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 556 U.S. at 678. Thus, mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice; a plaintiff must offer specific factual allegations to support each claim. Twombly, 550 U.S. at 555. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Iqbal, 556 U.S. at 679.  In other words, a plaintiff must offer sufficient factual allegations to "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555. Given this standard, "determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

"Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive early to flush out frivolous RICO allegations at an early stage of litigation.'" Manhattan Telecomms. Corp. v. DialAmerica Mktg., 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001).  One Circuit Court has also noted, "[a]s other courts have recognized, the concern expressed in Twombly is just as applicable to a RICO case, which resembles an antitrust case in point of complexity and the availability of punitive damages and of attorneys' fees to the successful plaintiff. RICO cases, like antitrust cases, are 'big' cases and the defendants should not be put to the expense of big-case discovery on the basis of a threadbare

6

claim." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 370 (3d Cir. 2010) (citation omitted).
Accord  Christou v. Beatport, LLC, 849 F. Supp. 2d 1055, 1077 (D. Colo. 2012).

**B.      Plaintiffs Have Not Alleged That Urban Lending Participated In The Conduct Or Affairs Of A Distinct RICO Enterprise.**

Plaintiffs fail to allege that Urban Lending conducted or participated in the affairs of a distinct RICO enterprise. Indeed, this RICO element requires *specific* allegations that satisfy the "operation or management" test enunciated in Reves v. Ernst & Young, 507 U.S. 170, 183 (1993).  In Reves, the Supreme Court held that a defendant could be found to have conducted or participated in the conduct of an enterprise only if it was involved in the "operation or management" of the enterprise.  The Court explained that the term "conduct," as used in section 1962(c), "requires an element of direction" and rejected the view that "almost any involvement in the affairs of an enterprise would satisfy the 'conduct or participate' requirement." Id. at 178. The Court recognized that to "participate . . . in the conduct" of the affairs of the enterprise "one must have some part in directing those affairs." Id. at 178, 179.  Furthermore, the Court held that a defendant "must have conducted or participated in the conduct of the enterprise's affairs, not just [its] own affairs." Id. at 183.

It is well-established that "the operation and management test set forth in Reves . . . is a ***very difficult test*** to satisfy." LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996) (emphasis added). Thus, a RICO claim fails where a plaintiff fails to specifically allege that the defendant exercised some degree of control over a distinct enterprise as opposed to having managed or directed its own affairs.  See, e.g., Tal v. Hogan, 453 F.3d 1244, 1263 (10th Cir. 2006), cert. denied, 549 U.S. 1209 (2007) (dismissing RICO claim where Plaintiffs failed to allege that Defendants participated in the operation or management of the enterprise); BancOklahoma Mortg. Corp. v. Capital Title Co., 194 F.3d 1089, 1100 (10th Cir. 1999) (each defendant must have participated in the conduct of the affairs of the RICO enterprise); Bast v. Cohen, Dunn & Sinclair, P.C., 59 F.3d 492, 495 (4th Cir. 1995) (plaintiff

7

must allege facts satisfying <u>Reves</u> test); <u>FDIC v. First Interstate Bank, N.A.</u>, 937 F. Supp. 1461,

1472 (D. Colo. 1996) ("[l]iability depends on showing that the defendants conducted or

participated in the conduct of the enterprise's affairs, not just their own affairs.") (citations

omitted).

   While Plaintiffs purport to satisfy this prong by generally alleging that BOA enlisted

Urban Lending "to act as a member of, and partner in, the RICO enterprise" the factual

allegations reflect that BOA controlled the purported enterprise.  (ECF No. 12 at ¶4).  Plaintiffs

expressly allege that:

- "Urban employees….similarly described how Urban would let documents sit and age without acting on them – all with the full knowledge of the ***BOA executives who were supervising Urban***."  (ECF No. 12 at ¶64);

- "***BOA tasked Urban*** with uploading financial documents it received from homeowners into computer systems that BOA underwriters could then review."  (ECF No. 12 at ¶65);

- "Former employees….have described the ***intense pressure BOA placed on Urban***….to close files as fast as possible."  (ECF No. 12 at ¶70);

- "***BOA demanded and received*** daily, or even hourly, updates on everything Urban was doing with regard to HAMP."  (ECF No. 12 at ¶82);

- "***At BOA's direction*** and with BOA's full knowledge, Urban instructed its employees to close borrowers' claim modification files without an adequate investigation.";  (ECF No. 12 at ¶249); and

- "BOA and its officers and employees…***supervised Urban*** and coordinated with Urban and its officers and employees….to ensure that the processes were carried out according to plan."  (ECF NO.  12 at ¶271).

   Indeed, Plaintiffs branded BOA "the kingpin of the enterprise" which "assigned" Urban

Lending certain functions.  (ECF No. 12 at ¶4).  At bottom, Plaintiffs allege that Urban Lending

managed its own affairs in its business relationship with BOA.[2]  (ECF No. 12 at ¶¶ 56, 59, 92,

---

[2] In their Complaint, Plaintiffs alleged that BOA maintained "strict and meticulous control" over Urban Lending.  (ECF No. 1 at ¶59). While Plaintiffs have conveniently dropped that allegation, it should be considered by this Court as it negates Plaintiffs' new allegations to the contrary. <u>See e.g.</u> <u>Burton v. Foch Invs., Inc.</u>, No. 2:07-CV-0008, 2007 WL 2914772, at *2 (D. Nev. Oct. 3, 2007) (emphasizing that "[n]or need the court accept as true allegations in an amended complaint that, without any explanation, contradict an earlier complaint"); <u>Azadpour v. Sun Microsys., Inc.</u>, No. C06-03272, 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 22, 2007) (same).

DMEAST #17596788 v3

179).  The Court, however, made clear in <u>Reves</u> that a defendant's management of its own affairs cannot satisfy the operation or management test.

Moreover, Plaintiffs cannot satisfy the <u>Reves</u> test by generally pleading that a party managed the affairs of the enterprise.  It was incumbent upon Plaintiffs to plead the scope of Urban Lending's involvement in the operation or management of a distinct RICO enterprise engaged in the loan modification scheme.  Cursory references to Urban Lending as a "partner" do not suffice.  <u>See</u> <u>General Steel Domestic Sales, LLC v. Denver/Boulder Better Bus. Bureau</u>, No.  1:07-cv-01145-DME-KMT, 2009 WL 535780, at *22 (D. Col. Mar. 2, 2009) (dismissing RICO claim where plaintiff "has not alleged how any of these defendants specifically directed the enterprise's affairs").  Additionally, the mere fact that Urban Lending and BOA maintained a business relationship does not satisfy the <u>Reves</u> operation or management test.  <u>See</u>, <u>e.g.</u>, <u>United Food & Commercial Workers Unions & Employees Midwest Health Benefits Fund v. Walgreen Co.</u>, 719 F.3d 849, 855 (7th Cir. 2013) (allegations of regular communication and commercial interaction between defendants "however, shows only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for" illegal activities).

Finally, the fact that Urban Lending provided professional loan-related services to BOA with respect to the processing of HAMP applications does ***not*** establish participation in the conduct or affairs of an enterprise.  <u>See</u> <u>Goodrow v. Friedman & Macfadyen, P.A.</u>, No. 3:11cv20, 2012 U.S. Dist. LEXIS 182188, at *39 (E.D. Va. Dec. 27, 2012) ("An allegation that defendants engaged in a mortgage lending enterprise, without more, fails to sufficiently allege the "enterprise" element of a RICO violation.") (citation omitted). Moreover, even if Urban Lending's loan-related services facilitated BOA's alleged racketeering activity, it is axiomatic that a party cannot be held liable under RICO for merely facilitating the operation of an enterprise.  <u>See</u>, <u>e.g.</u>, <u>In re Taxable Munic. Bond Sec. Litig.</u>, No. 90-4714, 1993 WL 534035, at *4 (E.D. La. Dec. 13, 1993) (performance of services that "facilitate operation of an enterprise does not represent participation in the 'operation or management' of the enterprise."); <u>Morin v.</u>

9

Trupin, 835 F. Supp. 126, 135 (S.D.N.Y. 1993) (noting that "'[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.'") (quoting University of Maryland v. Peat, Marwick, Main & Co., 996 F.2d 1534 (3d Cir. 1993)).  As Plaintiffs failed to  allege that Urban Lending participated in the conduct or affairs of a distinct enterprise, the RICO claim should be dismissed.

## C. Plaintiffs Have Failed To Allege That Urban Lending Engaged In Any Racketeering Activity.

### 1. Plaintiffs' Wire and Mail Fraud Claim Violates Rule 9(b).

Plaintiffs must also establish that Urban Lending engaged in a pattern of racketeering. Plaintiffs generally allege that "Defendants" engaged in numerous acts of wire and mail fraud. To establish the predicate act of mail fraud, Plaintiffs must allege: (1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) the use of the United States mails for the purpose of executing the scheme.  Tal v. Hogan, 453 F.3d 1244, 1263 (10th Cir. 2006), cert. denied, 549 U.S. 1209 (2007); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 892 (10th Cir. 1991).  "The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud."  BancOklahoma Mortg. Corp., 194 F.3d at 1102.

"The common thread among . . . these crimes is the concept of 'fraud.' Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury." Id. at 1103; accord Tal, 453 F.3d at 1263.

The particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure governs mail and wire fraud.  Robbins v. Wilkie, 300 F.3d 1208, 1211 (10th Cir. 2002); Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 989–90 (10th Cir. 1992); Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir. 1989).   Thus, "a complaint

alleging fraud [must] 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.' " Koch v. Koch Indus., 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176, 180 (10th Cir. 1991)).  "When a plaintiff is dealing with more than one defendant, he or she is under a Rule 9(b) obligation to specify which defendant told which lie and under what circumstances." Internet Archive v. Shell, 505 F. Supp. 2d 755, 768 (D. Colo. 2007) (citation omitted).

In Count I, Plaintiffs fail to specify how Urban Lending violated the mail and wire fraud statutes. Rather, Plaintiffs generally reference "Defendants' repeated violations of the federal mail and wire fraud statutes" without identifying which defendant engaged in which action. (ECF No. 12 at ¶255).  For example, Plaintiffs allege as follows:

- "Urban and BOA would receive documents and information….and intentionally fail to record receipt of the documents on electronic systems or to convey the modification package to underwriting for months."  (ECF No. 12 at ¶257);

- "Urban and BOA intentionally manipulated and falsified data on customers' electronic files so that files could be closed and modification applications rejected."  (ECF No. 12 at ¶259);

- "Urban and BOA would send borrowers notices….that information or documentation would be missing from the homeowners' modification files when Urban and BOA knew that the homeowners had provided the information."  (ECF No. 12 at ¶260); and

- "Urban and BOA regularly sent customers notices of denial….to be based on reasons that were untrue."  (ECF No. 12 at ¶261).

Furthermore, nowhere in the Amended Complaint do Plaintiffs allege the time or place of any Urban Lending misrepresentation.  Plaintiffs also fail to identify the Urban Lending employee that allegedly made any false representation. In fact, the named Plaintiffs either identify BOA as the entity that sent the communication or fail to identify the defendant sending the communication at all. For example, Plaintiffs allege that:

- "The Leavitts received a letter stating they were not eligible for a HAMP modification because a more appropriate alternative existed."  (ECF No. 12 at ¶146);

- "[T]he Leavitts finally received a permanent modification offer by mail."  (ECF No. 12 at ¶142);

11

- "Instead of documents regarding a modification, Mr. George received a Notice of Intent to Accelerate."  (ECF No. 12 at ¶167);

- "They called BOA several times to request a HAMP modification."  (ECF No. 12 at ¶168);

- "Mr. George received a letter in the mail acknowledging his requests for a HAMP modification, and instructing him to send financial documents."  (ECF No. 12 at ¶169);

- "Mr. Dalton called BOA several times, and was repeatedly transferred."  (ECF No. 12 at ¶196); and

- "Mr. Dalton continued to call BOA through the autumn of 2009.  He was repeatedly told his file was under review for a HAMP modification."  (ECF No. 12 at ¶201).

Finally, Plaintiffs cannot base their fraud claim against Urban Lending on the alleged improper denial of a HAMP modification.  See Orcilla v. Bank of America, N.A., No. C10-03931 HRL, 2010 WL 5211507, at *4 (N.D. Cal. Dec. 16, 2010) (dismissing RICO claim arising out of the defendant's alleged foreclosure of mortgage prior to determining modification application under HAMP as "Plaintiffs do not sufficiently allege mail fraud since it is unclear how Plaintiffs were defrauded"); Colbert v. Federal Nat. Mortg. Ass'n, No. H-12-2827, 2013 WL 505343, at *3 (S.D. Tex. Feb. 8, 2013) (dismissing fraud claim arising out of alleged foreclosure of loan under HAMP review as "the allegations do not include the statements contended to be fraudulent, the time any such statements were made, or why such statements were fraudulent"); Bisson v. Bank of America, N.A., 919 F. Supp. 2d 1130, 1137 (W.D. Wash. 2013) (dismissing fraud claim arising out of alleged HAMP non-compliance as "Plaintiffs have failed to distinguish between the 55 plaintiffs in this action….[t]o properly allege fraud, Plaintiffs must, at a minimum, match allegedly fraudulent statements to particular Plaintiffs and explain how each Plaintiff relied on that statement and suffered damages").  Hence, Plaintiffs have failed to plead actionable mail or wire fraud by Urban Lending.

## 2.    Plaintiffs Have Failed To Allege Extortion by Urban Lending.

While Plaintiffs' fraud claim is without merit, their extortion claim is simply frivolous.  In essence, Plaintiffs allege that "Defendants" engaged in extortion by "threatening them with the loss of their home if the borrowers do not accept a modification on the terms that BOA dictates."

DMEAST #17596788 v3

(ECF No. 12 at ¶127).  Incredibly, Plaintiffs cannot identify a *single communication* allegedly made by Urban Lending to a named Plaintiff that could constitute extortion. Instead, the Amended Complaint improperly groups BOA and Urban Lending together without identifying how each defendant extorted Plaintiffs.  (ECF No. 12 at ¶¶263-268).  Plaintiffs' vagueness is not surprising as Urban Lending could not have engaged in the alleged extortion as it neither owned nor serviced Plaintiffs' mortgage loans, and thus could not have filed for or benefitted from foreclosure.

Assuming *arguendo* that Plaintiffs could attribute a communication threatening foreclosure to Urban Lending, the extortion claim still fails as a matter of law.  It is axiomatic that "the threat of litigation by a party to enforce its legal rights does not constitute extortion." DIRECTV, Inc. v. Rayborn, No. 5:03-CV-59, 2003 WL 23200248, at *2 (W.D. Mich. Oct. 20, 2003); see also All Direct Travel Servs., Inc. v. Delta Air Lines, Inc., 120 Fed. Appx. 673, 675 (9th Cir. 2005) (granting summary judgment on RICO claim as "[defendant's] threat to terminate its relationship with travel agents if they refuse to pay the debit memos does not amount to extortion because, under the ARC Agreement, [defendant] *has the right to terminate its relationship* with any travel agent for any reason or no reason") (emphasis added).

Indeed, foreclosure threats "are nothing more than conduct undertaken in the ordinary course of business or litigation and cannot be fairly characterized as extortion that is independently wrongful under RICO."  Book v. Mortg. Elec. Registration Sys., 608 F. Supp. 2d 277, 282 (D. Conn. 2009); Dost v. Nw Tr. Servs., Inc., 3:11-cv-00270-ST, 2011 WL 6794028, at *12 (D. Or. Dec. 21, 2011) (emphasizing that "[t]hreats of foreclosure do not extortion make"). Tellingly, Plaintiffs do not dispute the loans were delinquent or that the loan documents afforded the lender a legal right to foreclose in the event of default. Hence, Plaintiffs have failed to establish any pattern of racketeering, and Count I should be dismissed.

13

**D.** **Plaintiffs Failed to Allege that Urban Lending Proximately Caused Any Damages.**

Plaintiffs fail to allege facts demonstrating that Urban Lending proximately caused any damages. See, e.g., Hemi Group, LLC v. N.Y., 559 U.S. 1, 9 (2010) (emphasizing that "to state a civil claim under RICO, the plaintiff is required to show that a RICO predicate offense not only was a but for cause of his injury, but was the proximate cause as well.") (citation omitted). While Plaintiffs generally allege damages such as "[i]ncreased loan pay-off times" and "harm to credit," (ECF No. 12 at ¶274), they fail to allege any direct relationship between specific conduct of Urban Lending and their damages. See Hemi, 559 U.S. at 9 (proximate cause "requires some direct relation between the injury asserted and the injurious conduct alleged").

Further, Plaintiffs cannot establish proximate causation in the context of mail and wire fraud without showing that *someone* relied on Urban Lending's alleged false statements. See Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 658-59 (2008) (RICO plaintiff must show that "*someone* relied on the defendant's misrepresentations");[3] UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 133 (2d Cir. 2010) (RICO plaintiffs alleging mail fraud to prove reliance "as part of their chain of causation"). Here, the Amended Complaint fails to allege *how* anyone relied on specific representations of Urban Lending.

Moreover, as a matter of law, Plaintiffs have no damages as the result of alleged non-compliance with HAMP. In fact, this exact claim was contemplated -- and rejected -- in Bowers v. Bank of America, N.A., 905 F. Supp. 2d 697, 703 (D. Md. 2012). In Bowers, the borrower sought damages for fraud as the result of the defendant's alleged failure to process a HAMP modification application. The Court held that the borrower alleged no damages and dismissed

---

[3] The Supreme Court has clarified that "the plaintiff's loss must be a foreseeable result of *someone's* reliance on the misrepresentation." Bridge, 553 U.S. at 656. The Supreme Court noted that "it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation," and that there may be situations where the "complete absence of reliance may prevent the plaintiff from establishing proximate cause." Id. at 658-59. This case presents just such a situation.

DMEAST #17596788 v3

the fraud claim reasoning that "even if BOA were intentionally deceiving him, assuming that the bank never intended to actually process mortgage modifications, [plaintiff] can show no actual loss he suffered that was caused by the bank's failure to do so." Id. at 702. The Court noted that the plaintiff was already obligated to pay the outstanding amount under the loan documents. Id.; see Adams v. U.S. Bank, No. 10-10567, 2010 WL 2670702, at *4 (E.D. Mich. July 1, 2010) (dismissing fraud claim arising out of rejected HAMP modification as "the fact that [the defendant] may have informed Plaintiff that it would consider her for a loan modification and then lost or destroyed her loan modification application does not imply that she suffered injury as a result. Plaintiff already was indebted for the amount of the mortgage").

Here, Plaintiffs were delinquent on their loans during the pendency of their HAMP applications.  (ECF No. 12 at ¶¶266-268).  Plaintiffs do not contest the validity of the original note and mortgage.  There is no allegation that the original loan documents were procured by fraud. Plaintiffs had an unconditional obligation to pay the outstanding amount under their loans. Hence, Plaintiffs suffered no damages as the result of the alleged modification scheme and thus the RICO claim should be dismissed with prejudice.

IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

/s/  *Sarah B. Wallace*

|  |  |
|---|---|
| Of Counsel: | Sarah B. Wallace |
| Martin C. Bryce, Jr. | wallaces@ballardspahr.com |
| Ballard Spahr LLP | Ballard Spahr LLP |
| 1735 Market Street, 51st Floor | 1225 17th Street |
| Philadelphia, PA  19103 | Suite 2300 |
| Telephone: 215.864.8238 | Denver, CO  80202-5597 |
| Facsimile: 215.864.8999 | Telephone: 303.292.3400 |
|  | Facsimile: 303.296.3956 |
|  |  |
| Dated:  September 16, 2013 | Attorneys for Defendant Urban Lending |

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2013 a true and correct copy of the foregoing **DEFENDANT URBAN LENDING'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Steve W. Berman, Esq.
Tyler Stuart Weaver, Esq.
Hagens Berman Sobol Shapiro, LLP- Seattle
1918 Eighth Avenue
Suite 3300
Seattle, WA 98101-1214

Craig R. Valentine
Hagens Berman Sobol Shapiro LLP
2301 E. Pikes Peak Avenue
Colorado Springs, CO 80909
719.635.0377 (p)
719.635.2920 (f)
craigv@hbsslaw.com

*Attorneys for Plaintiffs*

Peter Korneffel, Esq.
Bryan Cave LLP
1700 Lincoln Street
Suite 4100 Denver, CO 80203
Telephone: 303 866 0233
Facsimile: 303 335 3833
peter.korneffel@bryancave.com

Keith Levenberg, Esq.
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: 202 346 4248
Facsimile: 202 346 4444
M: 646 229 6886
klevenberg@goodwinprocter.com

*Attorneys for Defendant Bank of America, N.A.*


*s/ Katya H. Moses*
Katya H. Moses

DMEAST #17596788 v3