**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civ. A. No. 13-cv-01819-PAB-KLM

RICHARD GEORGE,
STEVEN LEAVITT,
SANDRA LEAVITT, and
DARRELL DALTON,
      Plaintiffs,

v.

URBAN SETTLEMENT SERVICES d/b/a URBAN LENDING SOLUTIONS, and
BANK OF AMERICA, N.A.,
      Defendants.

---

**DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS**
**THE FIRST AMENDED CLASS ACTION COMPLAINT**

---

This case is one of hundreds across the country brought by home-mortgage borrowers who received trial loan modifications under the federal Home Affordable Modification Program (HAMP) complaining that they did not receive the permanent modifications to which they claim to be entitled—or did not receive them as soon as they would have liked.[1]  Courts have almost uniformly dismissed these cases, including those asserting the incendiary but ultimately hollow theory of this complaint that the processing of Plaintiffs' HAMP applications somehow amounts to a criminal racketeering enterprise under RICO.  The same result is warranted here.

The U.S. Treasury Department launched HAMP in early 2009 as part of an initiative to make mortgage payments more affordable for certain at-risk homeowners through a combination of interest-rate reductions, term extensions, and principal forbearance.  The program (actually multiple programs, because each government-sponsored mortgage investor maintains its own

---

[1] Certain HAMP-related claims against Bank of America are also centralized in an MDL, *In re Bank of Am. HAMP Contract Litig.*, 746 F. Supp. 2d 1359 (J.P.M.L. 2010), some of which appear to overlap with this case and may ultimately require consolidation.

version) has evolved considerably but has generally operated by requiring borrowers to apply for modifications on a trial basis based on information about their assets, property, and finances, and demonstrate their eligibility for a permanent modification through that trial period.  Two of the Plaintiffs in this case allege that they went through trials under FHA HAMP, the version of HAMP applicable to loans insured by the Federal Housing Administration.  *See* AC (Dkt. #12) ¶ 228.  Both eventually received permanent modifications.  The third Plaintiff was offered three different non-HAMP trial plans (¶¶ 208, 211, 215) and two different permanent modifications (¶¶ 209, 217), but complains he was not offered one under HAMP.  All complain that the processing of their applications by Bank of America and its outside vendors constitutes racketeering and assert claims under RICO as well as under a promissory-estoppel theory.

## STANDARD OF REVIEW

A complaint must be dismissed where it fails to allege "plausible" facts which, if true, provide grounds for relief, taking into account any "obvious alternative explanation" for the conduct alleged.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007); FED. R. CIV. P. 12(b)(6).  Because Plaintiffs' claims are based on allegations of fraud, Plaintiffs must plead the alleged fraud with particularity.  FED. R. CIV. P. 9(b); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 522 (10th Cir. 2013).  In evaluating a 12(b)(6) motion, the Court may consider documents "referred to in the complaint [and] central to the plaintiff's claim," *id.* at 521, as well as facts subject to judicial notice.  *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).

## ARGUMENT

### I.
### PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF A RICO CLAIM.

Plaintiffs' second attempt to state a RICO claim fails because they have not established

18 U.S.C. § 1962(c)'s four elements:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010).

A.   **Plaintiffs Fail to Plead a RICO Enterprise.**

The RICO claim fails for the fundamental reason that Plaintiffs do not plausibly plead an "enterprise," which is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(1).  Plaintiffs base their claims on the theory that Bank of America and Urban formed "an association-in-fact enterprise" with their own employees, two other outside vendors of the bank, and two of the bank's law firms.  AC ¶¶ 4, 248.  This cannot qualify as a RICO enterprise.

1.   **Plaintiffs' Deficient and Boilerplate Enterprise Allegations Do Not Satisfy RICO's Distinctness Requirement.**

It is well-established that a RICO enterprise cannot consist solely of the defendants, because an enterprise must be an entity distinct from the "person[s]" accused of violating RICO. *Bd. of County Comm'rs v. Liberty Grp.*, 965 F.2d 879, 885 (10th Cir. 1992); *Dopp v. Loring*, 54 F. App'x 296, 298 (10th Cir. 2002); *Switzer v. Coan*, 261 F.3d 985, 992 (10th Cir. 2001). Plaintiffs have attempted to evade this requirement by accusing Defendants of forming an enterprise with their own employees, and by amending their complaint to allege additional enterprise members.  Neither tactic works.  The Tenth Circuit has held that:

> the distinctiveness requirement may not be avoided by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendants.  Where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

*Dirt Hogs, Inc. v. Natural Gas Pipeline Co.*, 210 F.3d 389 (table), 2000 WL 368411, *3 (10th

Cir. Apr. 10, 2000).  Logically, a corporation "cannot act except through its officers, agents, and employees," *Bumgarner v. Blue Cross & Blue Shield of Kan., Inc.*, 716 F. Supp. 493, 501 (D. Kan. 1988), so alleging that a corporation formed an enterprise with its employees is just as fatal to a RICO claim as alleging that a corporation formed an enterprise with itself.[2]

Plaintiffs' new allegations that the enterprise "also included Sykes Enterprises, Inc.[,] Wingspan Portfolio Advisors, Robertson Anschutz & Vetters, and Robertson Anschutz & Schneed" (AC ¶ 248) are also insufficient to plead a RICO enterprise.  Plaintiffs allege nothing about these entities other than that Bank of America "retained [Sykes] to communicate with customers," hired Wingspan "to process customer efforts to secure loan modifications," and retained the two Robertson law firms as outside foreclosure counsel.  AC ¶ 125.  In other words, each of these entities is just another agent of Bank of America.[3]  No RICO enterprise can exist under those circumstances.  *See Dirt Hogs*, 2000 WL 368411 at *3 ("Because the 'enterprise' identified by plaintiff appears to be nothing more than another name for [defendant] and its agents, conducting the corporation's business, the complaint fails to describe an enterprise distinct from the defendant corporation.") (citing *Liberty Grp.*, 965 F.2d at 885-86).

Plaintiffs' boilerplate enterprise allegations are also insufficient because they do not

---

[2]  *See Bumgarner,* 716 F. Supp. at 501 ("Any association comprised of Blue Cross and its agents and officers acting in their employment capacity is, in fact, Blue Cross itself."); *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 223 F.R.D. 566, 600 (D. Kan. 2004) ("A corporation cannot violate RICO absent an association with an entity other than itself, and it is insufficient to allege that the corporation's officers and employees constituted this other entity.").

[3]  *See Brown v. McCormick*, 608 F.2d 410, 417 (10th Cir. 1979) ("we must consider the lawyer to be the client's agent"); *Ocrant v. Dean Witter & Co.*, 502 F.2d 854, 858 (10th Cir. 1974) ("[agency] relationship exists if the conduct of the parties manifests the willingness of one person to have another act for him subject to his control, and the consent of the other so to act"). Plaintiffs' own factual allegations about the relationship between Bank of America and the other entities leave no room for any other conclusion.

"allege specific facts," instead relying on impermissible "conclusory allegations [to] establish the existence of the enterprise." *Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. P'ship*, 817 F. Supp. 908, 915 (D. Kan. 1993). Plaintiffs say nothing about Sykes, Wingspan, and the Robertson firms other than that Bank of America "retained" and "used" them (¶ 125) and the conclusory statement that they are "included" in the enterprise (¶ 248). Plaintiffs do not allege any "specific facts" which would establish that these entities "associated together for a common purpose," had "an ongoing organization," "function[ed] as a continuing unit," or met any other prerequisites for being part of a RICO enterprise. *Seidl v. Greentree Mortg. Co.*, 30 F. Supp. 2d 1292, 1305 (D. Colo. 1998). Without such specific facts, Plaintiffs' allegations about them cannot be credited. And without well-pleaded allegations of an enterprise that goes beyond the defendants, Plaintiffs fail to satisfy RICO's distinctness requirement.

### 2. An Association Formed to Carry Out the Bank's Regular Business Affairs Cannot Be a RICO Enterprise.

RICO liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Here, however, Plaintiffs do not allege that the supposed "enterprise" was formed to conduct any affairs other than Bank of America's. This is fatal to a RICO claim.

Plaintiffs allege that Bank of America contracted with Urban and other third parties "to provide HAMP-related ministerial services" and that "BOA assigned to Urban key functions required to modify mortgage loans under the HAMP process." AC ¶¶ 78, 81. Plaintiffs allege that these services and functions included "interacting with homeowners seeking HAMP modifications, collecting and processing documents from homeowners, and corresponding with homeowners." ¶ 4. More specifically, Plaintiffs allege (¶¶ 83, 84, 85, 62, 125) that:

- "BOA assigned Urban to analyze the data in a 'pool' of loans to determine the preferred modification program based on BOA criteria and perform quality control on the data."

- "Using BOA's criteria, Urban was to decide which modification program was 'appropriate.'"

- "Urban was to receive, track, and perform quality control on financial documents sent by customers.  It was to upload the documents to a web-based share-point site where it [*sic*] could be viewed by BOA."

- "Urban was to field telephonic inquiries from BOA customers regarding the status of their loan modifications and strive to answer the customers' questions."

- "BOA also assigned Urban the task of proactively notifying homeowners when required documents were missing.  To carry out the goal of the enterprise, Urban used scripts for the calls."

- "BOA retained [Sykes Enterprises] to communicate with customers who called in to inquire as to the status of their efforts to secure loan modifications; Wingspan Portfolio Advisors . . . to process customer efforts to secure loan modifications; [and] the related law firms of Robertson Anschutz & Vetters and Robertson Anschutz & Schneed . . . to facilitate foreclosures."

In other words, "the goal of the enterprise" was to facilitate Bank of America's regular business.

Plaintiffs' conclusory (and false) allegations that Bank of America was engaging in "deliberate" fraud in its administration of HAMP (¶¶ 2, 60), even if credited, would not change the fact that the enterprise is not alleged to have any affairs other than the bank's.  *See Liberty Grp.*, 965 F.2d at 885 ("A separate enterprise is not demonstrated by the mere showing that the corporation committed a pattern of predicate acts in the conduct of its own business."); *Brannon*, 153 F.3d at 1149 (no enterprise "because the complaint 'alleges only that the defendants perpetrating the fraud . . . were conducting their own . . . affairs'").  In *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438 (5th Cir. 1987), the Fifth Circuit rejected RICO claims based on allegations that the enterprise was engaged in the "mailing of false [loan] statements requesting payment of interest in excess of the agreed amount."  *Id.* at 441.  The Court reasoned, "The

mailing of loan statements was an activity of the bank.  There is no evidence of any other activity on the part of the alleged enterprise."  *Id*.  That principle is squarely applicable here.  The activities of the alleged enterprise all constitute basic "activit[ies] of the bank," and there are no allegations of any enterprise activities *other* than the activities of the bank.  Merely calling those activities fraudulent does not establish a RICO enterprise.

**B.      Plaintiffs Fail to Plead Actual Racketeering Activity.**

Plaintiffs fail to allege racketeering activity for the fundamental reason that a single scheme with a single goal such as the one alleged here does not, as a matter of law, constitute a pattern of racketeering.[4]  This is because RICO is directed at criminal organizations, not simply any random business activity a plaintiff might decide to call fraudulent.  The complaint can and should be dismissed on these grounds alone.

Plaintiffs also fail to plead racketeering activity because they allege no predicate acts: there is nothing extortionate about routine mortgage debt servicing, and Plaintiffs do not plead any actual fraud in connection with the alleged scheme to defraud.

**1.   No predicate acts of extortion.** — Plaintiffs absurdly argue that Bank of America committed extortion by (i) offering the Leavitts a permanent modification with a $12,000 balloon payment at the end (AC ¶ 154), (ii) sending Mr. George a notice that he needed to pay $8,000 "to

---

[4]  *See, e.g., Kamin v. Colo. Nat'l Bank of Denver*, 648 F. Supp. 52, 54 (D. Colo. 1986) (no pattern of racketeering because "while plaintiff has alleged several predicate acts, each of those acts is only directed towards a single fraudulent scheme"); *Sullivan*, 714 F. Supp. at 1136 (no pattern of racketeering because "plaintiffs' allegations assert only one scheme"); *Garbade v. Great Divide Min. & Mill. Corp.*, 645 F. Supp. 808, 815 (D. Colo. 1986) ("because the acts are only directed toward a single fraudulent scheme, they do not constitute a pattern of racketeering"); *Creech v. Fed'l Land Bank of Wichita*, 647 F. Supp. 1097, 1100-1101 (D. Colo. 1986) ("A pattern of racketeering activity requires multiple criminal episodes or schemes, not simply multiple predicate acts to accomplish a single scheme.").

avoid foreclosure" (¶¶ 167, 191), and (iii) offering Mr. Dalton a modification "less advantageous than a HAMP modification," which he accepted to avoid foreclosure (¶ 208). None of these remotely qualifies as extortion. Extortion requires "the obtaining of property from another," 18 U.S.C. § 1951(b)(2), and Bank of America is not alleged to have "obtained" the balloon payment from the Leavitts—to the contrary, Bank of America no longer services their loan and they have since received a different loan modification with their new servicer. AC ¶¶ 156, 158. Nor could there have been any "obtaining of property" from Messrs. George or Dalton when the only thing obtained was payments owed under their loans. "Threats of foreclosure do not extortion make. '[They] are nothing more than conduct undertaken in the ordinary course of business. . . .'" *Dost v. N.W. Tr. Servs.*, 2011 WL 6794028, *12 (D. Ore. Dec. 21, 2011) (quoting *Book v. MERS*, 608 F. Supp. 2d 277, 282 (D. Conn. 2009)); *accord Zander v. ACE Mortg. Funding, LLC*, 2012 WL 601896, *3 (C.D. Cal. Feb. 23, 2013) (same). Extortion requires one to have taken property "that was not due to him," and money owing on Plaintiffs' mortgages was, by definition, "due" to the bank. *Scheidler v. NOW, Inc.*, 537 U.S. 393, 402 (2003). Insofar as Mr. Dalton's claim is premised on allegedly being deprived of an opportunity to qualify for a better modification than the one he was offered, "a loss of a prospective future benefit" does not constitute lost property. *United States v. Reagan*, 2013 U.S. App. LEXIS 16036, *23 (5th Cir. Aug. 2, 2013).[5]

    **2. No predicate acts of fraud.** — All of the fraudulent statements Plaintiffs allege are

---

[5] Plaintiffs also fail to plead the requisite interference with interstate commerce. *See Salman v. Bond*, 81 F. App'x 149, 150 (9th Cir. 2003) (plaintiffs "failed to allege . . . that any of the [defendants] conspired to extort property that affects interstate commerce"); *MacArthur v. San Juan Cty.*, 416 F. Supp. 2d 1098, 1136 (D. Utah 2005) (no extortion where "plaintiffs are not engaged in the interstate transportation of goods"); *West Tex. Nat'l Bank v. FEC Holdings, LP*, 2013 WL 2158947, *6 (W.D. Tex. May 17, 2013) (plaintiff failed to plead "RICO claim with extortion as a predicate act" because it "did not plead. . . an act of extortion that caused an interference with interstate commerce").

either improperly pleaded, not actually fraudulent, or both.  Most of Plaintiffs' fraud allegations are sweeping generalizations not connected to any actual statement, and thus can be ignored.[6]  Where Plaintiffs do attempt to allege actual statements made to them, they turn out to be wholly innocuous (and often still inadequately pleaded):

- Plaintiffs ridiculously complain that "consumers were led to believe that they were dealing with BOA when actually, and unbeknownst to them, they were communicating with Urban."  ¶ 5.  But since Urban is Bank of America's vendor and agent, consumers *were* dealing with Bank of America when they were communicating with Urban.  *See Abley v. Davies*, 84 Colo. 398, 401 (1928) (agent's "representations and acts within the scope of the agency would be the representations and acts of his principal").

- Plaintiffs allege that "the Trial Period Plan ['TPP'] itself, the information BOA stated on its website, HAMP directives, and information on Treasury's MHA website all indicated that [Plaintiffs] could expect a permanent modification within a month of the end of the trial period."  AC ¶ 151.  Plaintiffs do not explain how Bank of America can be liable for statements made by the Treasury Department, and the statements they quote from Bank of America's web site—which concern HAMP, not FHA HAMP—do not say what Plaintiffs claim.  To the contrary, Plaintiffs quote a statement that "<u>If</u> you successfully make your payments during the 3-month trial period, <u>and</u> the documentation provided supports the initial review, we will sign off and your modification will become permanent."  AC ¶ 44.  In other words, borrowers were told that multiple conditions must be met before a modification will become permanent, and were *not* told this will occur "within a month."  Nothing in the TPPs promises this, either.  *See* Ex. 1, 2 ("the Loan Documents will not be modified unless and until I meet all of the conditions required for modification").  Plaintiffs' argument that TPPs promise permanent modifications has been rejected by courts across the country.[7]

_____

[6] *E.g.*, ¶ 123 (claims that "BOA and Urban employees knowingly misrepresented both the nature of the HAMP modification process and the status of borrowers' loan-modification applications"), ¶ 121 (claims that "the vast majority of borrowers who sought HAMP modifications . . . would instead be fraudulently denied a permanent modification"), ¶ 79 (allusions to "fraudulent pretenses of a homeowner's non-compliance"), ¶ 100 (claims that "BOA and Urban fraudulently denied permanent modifications to tens of thousands of borrowers").

[7] *Wittkowski v. PNC Mortg.*, 2011 WL 5838517, *3-4 (D. Minn. Nov. 18, 2011) ("Plaintiff was not promised a permanent loan modification in exchange for making timely payments and fulfilling the TPP document requirements."); *Stolba v. Wells Fargo & Co.*, 2011 WL 3444078, *3 (D.N.J. Aug. 8, 2011) (TPP's "plain language . . . makes clear that satisfying the TPP conditions for permanent modification does not guarantee that Plaintiff would receive such modification"); *Reitz v. Nationstar Mortg.*, LLC, 2013 WL 3282875, *11 (E.D. Mo. June 27,

- Plaintiffs claim that a pledge by a customer relationship manager (CRM) to provide "continuous status updates" was "false and misleading" because CRMs "each had hundreds of loans on their docket such that it was impossible to provide any reasonable service." AC ¶ 139. The number of loans CRMs managed is irrelevant to whether the pledge to provide status updates was false when made, and Plaintiffs' complaint that the service they received was not "reasonable" does not make the statement false, either.

- The Leavitts claim they "received a letter stating they were not eligible for a HAMP modification" and instructing them "to re-submit all documents." AC ¶ 146. Without any allegation that the Leavitts *were* in fact eligible for HAMP based on the documents they had submitted thus far, their claim that the letter was "deceptive" cannot be credited.

- Plaintiffs allege that it was "misleading and deceptive" to ask Mr. George "to send in financial documents so that BOA could determine his eligibility" for a trial modification. ¶ 169-70. It is neither. The Court may take judicial notice that FHA HAMP requires servicers to collect financial documents to determine a borrower's eligibility for a trial.[8]

- Mr. George claims "[h]e was told by [a] representative he spoke to on the telephone that his file was 'under review.'" AC ¶ 176. Plaintiffs do not articulate why this statement was fraudulent or even allege that Mr. George's file was not, in fact, "under review." The allegation is also inadequately pleaded because Plaintiffs fail to name the "representative."[9] The same is true of all the allegations made regarding Mr. Dalton's

---

2013) (TPP's "plain language . . . does not support the plaintiff's contention that the TPP was a contract entitling her to a loan modification"); *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1351 (S.D. Fla. 2011) (TPP's "plain language . . . does not explicitly guarantee permanent loan modifications"); *Bourdelais v. J.P. Morgan Chase*, 2011 WL 1306311, *4 (E.D. Va. Apr. 1, 2011) (TPP's "plain language. . . belies [plaintiff's] claim" that "homeowners who execute the TPP Agreement and fulfill its documentation and payment requirements are entitled to permanent modification"); *Brown v. Bank of N.Y. Mellon*, 2011 WL 206124, *3 (W.D. Mich. Jan. 21, 2011) (TPP "did not guarantee that Plaintiff's loan documents would be modified"); *Pandit v. Saxon Mortg. Servs., Inc.*, 2012 WL 4174888, *5 (E.D.N.Y. Sept. 17, 2012) ("TPP . . . does not obligate Defendant to permanently modify Plaintiffs' loan").

[8] *See* Ex. 3 at 2 (defining FHA HAMP Eligibility and Underwriting requirements to incorporate "[t]he guidance in [Mortgagee Letter] 2009-23 [Ex. 4]," requiring that servicers "obtain an executed Hardship Affidavit . . . from every mortgagor . . . seeking an FHA-HAMP" modification and that for a borrower "[t]o be eligible under FHA-HAMP" the servicer must perform calculations based on information on "the mortgagor's gross monthly income").

[9] *See Rosales v. AT&T Info. Sys., Inc.*, 702 F. Supp. 1489, 1549 (D. Colo. 1988) (complaint "fail[s] to satisfy Rule 9(b)" where it "does not identify the particular 'authorized agents and representatives' . . . with whom [plaintiff] dealt"); *AG Connection Sales, Inc. v. Greene Cty. Motor Co.*, 2008 WL 4329941, *6 (D. Kan. Sept. 16, 2008) ("[defendant] is a company comprised of a number of individuals and identification of a particular individual responsible for

alleged communications with the bank (AC ¶¶ 195-207).

- Mr. Dalton claims he was told he had to miss a mortgage payment to qualify for HAMP and calls this a "false representation of HAMP requirements" (AC ¶ 195), but Plaintiffs plead no facts supporting their claim of falsehood.  Absent such allegations, numerous courts have rejected identical claims.  *E.g.*, *Currie v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 72990, *16 (D. Md. May 23, 2013) ("Plaintiffs' allegations do not support a plausible inference that it was untrue, misleading, or deceptive to say that Plaintiffs had to be in default . . . to be considered for a loan modification"); *Traynor v. Chase Home Fin., LLC*, 2013 U.S. Dist. LEXIS 27004, *12 (N.D. Tex. Feb. 27, 2013); *Whatley v. Bank of America, N.A.*, 2012 WL 5906709, *3 (E.D. Cal. Nov. 26, 2012); *Lyons v. Bank of America, NA*, 2011 WL 6303390, *5 (N.D. Cal. Dec. 16, 2011).

- Plaintiffs point to some allegedly inconsistent statements made to Mr. Dalton and conclude that "[a]t least one of these statements was false."  AC ¶¶ 197, 205.  Courts have repeatedly rejected such allegations as a basis for a fraud claim.  *E.g.*, *Freitas v. Wells Fargo Home Mortg., Inc.*, 2011 WL 5524913, *3 (W.D. Mo. Nov. 14, 2011) ("In light of these conflicting representations, Plaintiffs are not able to demonstrate that they reasonably relied on any representation which is one of the elements that they must prove.  It is not a matter of picking and choosing what you want to hear."); *Pugh v. Bank of America*, 2013 WL 3349649, *15 (W.D. Tenn. July 2, 2013) ("Alleging that Defendants provided inconsistent and inaccurate information is not an allegation that they intentionally misrepresented that information."); *Butler v. Wells Fargo Bank, N.A.*, 2013 WL 3816973, *5 (D. Md. July 22, 2013) (no reasonable inference of fraud based on allegations that "Wells Fargo presented conflicting statements as to the status of Butler's loan modification, *i.e.*, approved, still qualified, in progress, or processing the request"); *Massey v. JPMorgan Chase Bank, N.A.*, 2012 WL 3743493, *7 (N.D. Tex. Aug. 29, 2012); *McCarter v. Bank of N.Y.*, 873 F. Supp. 2d 246, 250 (D.D.C. 2012);

- Plaintiffs allege that a letter Mr. Dalton received stating that "after being offered a [TPP] or modification, you notified us that you did not wish to accept the offer" "was false as it pertained to the two Trial Plans Mr. Dalton accepted" (AC ¶ 214), but Plaintiffs admit that Mr. Dalton did turn down a modification (¶ 209), rendering the statement true.

Finally, Plaintiffs also fail to plead mail or wire fraud because "specific intent to defraud"

is an essential element of both offenses, and Plaintiffs have no well-pleaded allegations of intent.

18 U.S.C. §§ 1341, 1343.  Instead, Plaintiffs offer only conclusory statements that Defendants

---

the misrepresentations is necessary to place [defendant] on the requisite notice"); *Capitol Business Solutions, LLC v. Konica Minolta*, 2008 WL 2761307, *3 (D. Kan. 2008) ("Simply stating that . . . a corporate entity[] made these misrepresentations is insufficient.  [Plaintiff] must identify the particular individual . . . who made the misrepresentations.").

"intended to deny modifications" (AC ¶ 38) and the like.  No *facts* showing intent are alleged. Crediting Plaintiffs' factual allegations would establish nothing more than that there were administrative challenges handling the millions of incoming documents necessary to process applications.  But that does not amount to fraud.  The "obvious alternative explanation," *Twombly*, 550 U.S. at 567, consistent with the fact that every other participating servicer has been accused of exactly the same things as Bank of America, is that a program rolled out on short notice targeting "4 million homeowners" (AC ¶ 26), combined with government pressure to place "500,000" borrowers in trial plans in just a few months (¶ 54), taxed servicers' resources and imposed major administrative challenges. Whatever recourses may be available to borrowers who wish things could have gone more quickly, a racketeering claim is not one of them.

Plaintiffs evidently decided to style their claims as RICO claims to differentiate their case from the hundreds of HAMP-related claims rejected by courts based on elementary common law principles.  *See*, *e.g.*, *supra* n.7.  But courts have rejected these claims when brought under RICO, too.  *See Slimm v. Bank of Am. Corp.*, 2013 U.S. Dist. LEXIS 62849, *84-85 (D.N.J. May 2, 2013) (failure to plead pattern of predicate acts); *Corpe v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 45412, *17-19 (W.D. Mo. Mar. 29, 2013) (no pattern of racketeering); *Goodrow v. Friedman & Macfadyen, P.A.*, 2012 U.S. Dist. LEXIS 182188, *38-44 (E.D. Va. Dec. 27, 2012) (no RICO enterprise and no well-pleaded allegations of fraud).  This Court should do the same.

## II.
### PLAINTIFFS FAIL TO PLEAD A PROMISSORY ESTOPPEL CLAIM.

Plaintiffs have foreclosed their promissory-estoppel claim by basing it on the theory that Bank of America, "by way of its trial-payment agreements, made representations to Plaintiffs that if they made their trial payments and otherwise qualified for HAMP modifications, they

would receive offers of permanent HAMP modifications."  AC ¶ 277.[10]  Promissory estoppel

provides a remedy only "in the absence of a formal agreement."  *Braddock Fin. Corp. v. Wash.*

*Mut. Bank*, 637 F. Supp. 2d 924, 933 (D. Colo. 2009); *see also Echostar Satellite, LLC v. Splash*

*Media Partners, LP*, 2010 WL 3873282, *9 (D. Colo. Sept. 29, 2010); *Needham v. Fannie Mae*,

854 F. Supp. 2d 1145, 1152 (D. Utah 2012).  In HAMP cases, courts have applied this principle

and rejected estoppel claims due to the actual, underlying TPPs.[11]  *E.g.*, *Prendes v. Select*

*Portfolio Serv., Inc.*, 2012 WL 6913511, *3 (N.D. Tex. Dec. 28, 2012); *Hernandez v. Aurora*

*Loan Servs., LLC*, 2011 WL 6178881, *5 (C.D. Cal. Dec. 13, 2011).

Plaintiffs have also failed to plead the three elements of the claim: (1) a promise, (2) a

reasonable expectation of reliance, and (3) actual and reasonable detrimental reliance.  *Schulz v.*

*City of Longmont*, 465 F.3d 433, 438 n.8 (10th Cir. 2006).  The TPPs make no promises.  Courts

have repeatedly rejected Plaintiffs' theory that TPPs constitute "representations" that Plaintiffs

"would receive offers of permanent HAMP modifications" (AC ¶ 277).  *See*, *e.g.*, *Grill*, 2011

WL 127891 at *8 (no promissory estoppel where TPP's "plain terms . . . expressly placed

plaintiff on notice that issuance of a loan modification was not guaranteed by simply sending in

the requested documentation and making trial period payments").[12]  Plaintiffs' TPPs contain the

---

[10]  While this claim is nominally asserted on behalf of all three Plaintiffs, only two are alleged to
have received HAMP trial agreements.  As to the third, the claim must be rejected out-of-hand,
because no promises could have been made to Mr. Dalton in a document he never received.

[11]  Bank of America does not concede that Plaintiffs' TPPs are enforceable agreements, but
accepting Plaintiffs' allegations of an "agreement" (AC ¶ 277) as true for purposes of this motion
would preclude Plaintiffs' claims on this basis.

[12]  *See also*, *e.g.*, *Bohnhoff v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 849, 857 (D. Minn. 2012)
("the TPP was not a promise"); *Costigan v. CitiMortgage, Inc.*, 2011 WL 3370397, *7 (S.D.N.Y.
Aug. 2, 2011) (dismissing claim that "Citi by way of the TPP agreement, made a
representation . . . that if [plaintiffs] returned the TPP agreements executed and with supporting

same conditional language that proved dispositive in these cases,[13] negating any claim of a "promise" and rendering any "reliance" on such a promise unreasonable. *See Crawford*, 2013 WL 1225387 at *6 ("any reliance . . . on any promise to modify" loan "would have been unreasonable given the plain language of the TPP"); *Pennington v. HSBC Bank USA, N.A.*, 2011 WL 6739609, *10 (W.D. Tex. Dec. 22, 2011) ("Because there is no guarantee of a loan modification in the TPP, Plaintiffs cannot claim they relied to their detriment on such a promise."), *aff'd*, 493 F. App'x 548 (5th Cir. 2012). Reliance is also absent because it requires a material change of position. *Frontier Exploration, Inc. v. American Nat'l Fire Ins. Co.*, 849 P.2d 887, 890 (Colo. Ct. App. 1992). Courts have rejected Plaintiffs' theory that "making monthly payments and taking other steps to try to obtain permanent HAMP modifications" (AC ¶ 278)

---

documentation, and made their TPP payments, they would receive a permanent HAMP modification"); *White v. JPMorgan Chase Bank, N.A.*, 2013 WL 3071894, *4 (D. Md. June 17, 2013) (no promise where "the plain language of the TPP Agreement provides that finalization of Plaintiffs' loan modification was conditional"); *Reitz v. Nationstar Mortg., LLC*, 2013 WL 3282875, *16 (E.D. Mo. June 27, 2013) (no "enforceable promise that mere compliance with the TPP Agreement automatically ensured a permanent loan modification"); *CitiMortgage, Inc. v. Crawford*, 2013 WL 1225387, *6 (S.D. Ohio Mar. 26, 2013) (no promise because TPP "gives the servicer broad discretion to determine whether the [borrowers] qualified"); *Pandit v. Saxon Mortg. Servs., Inc.*, 2012 WL 4174888, *5 (E.D.N.Y. Sept. 17, 2012) ("the TPP was not a promise"); *Burr v. JPMorgan Chase Bank, N.A.*, 2012 WL 1059043, *5 (S.D. Tex. Mar. 28, 2012) ("TPP in no way sets forth a promise").

[13] Plaintiffs' TPPs state that "the Loan Documents will not be modified unless and until I meet all of the conditions required for modification" and that "[t]he Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan." Ex. 1, 2. The TPPs also give Bank of America the right not to modify the loans if it "determines that [Plaintiffs'] have submitted any false or misleading information." *Id*. The George TPP also provides that it "will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature." Mr. George does not allege that Bank of America did so, rendering any promises in it ineffective and any reliance on them unreasonable. *See Pratt v. BAC Home Loan Servicing, LP*, 2012 WL 1565232, *5 (D. Md. Apr. 30, 2012) (reliance unreasonable because "[e]ven supposing the TPP could be construed as a clear promise to modify Plaintiff's loan if certain conditions occurred, one such condition would be receipt of a fully executed copy").

- 14 -

constitutes a change of position sufficient to constitute reliance.[14]

The complaint should be dismissed with prejudice.  Leave to replead would be futile because Plaintiffs have already had their second chance, and cannot cure their failure to plead the legal elements of their claims simply by describing communications with more particularity.

Respectfully submitted this 16th day of September, 2013.


/s/ Peter Korneffel
Peter Korneffel
Katie DeBord
James N. Phillips
BRYAN CAVE LLP
1700 Lincoln St., Ste. 4100
Denver, Colo.  80203
Tel.: (303) 861-7000
Fax: (303) 866-0200
peter.korneffel@bryancave.com
katie.debord@bryancave.com
james.phillips@bryancave.com

*Counsel for Defendant Bank of America, N.A.*

/s/ James W. McGarry
James W. McGarry
GOODWIN PROCTER LLP
Exchange Pl., 53 State St.
Boston, Mass.  02109
Tel.: (617) 570-1000
Fax:  (617) 523-1231
jmcgarry@goodwinprocter.com

Keith Levenberg
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C.  20001
Tel.: (202) 346-4000
Fax: (202) 346-4444
klevenberg@goodwinprocter.com

*Counsel for Defendant Bank of America, N.A.*

---

[14]  *See, e.g., Pennington*, 493 F. App'x at 557 ("Nor do the TPP payments constitute detrimental reliance because they were just applied to the loan"); *Osmond v. Litton Loan Serv., LLC*, 2011 WL 1988403, *3 (D. Utah May 20, 2011) (no reliance because plaintiff "does not demonstrate that she did something that she would not have done if Defendants had not made a promise"); *Ortiz v. America's Servicing Co.*, 2012 WL 2160953, *6-7 (C.D. Cal. June 11, 2012) ("Merely submitting a modification application or making payments . . . is insufficient to establish the required detrimental reliance, because plaintiff was already legally obligated to make payments under the loan"); *Bohnhoff*, 853 F. Supp. 2d at 857 (no detrimental reliance from trial payments because plaintiff "had a legal duty to make payments on the [original] Note"); *Nicdao v. Chase Home Finance*, 839 F. Supp. 2d 1051, 1071 (D. Alas. 2012) ("Plaintiff alleges that she made nine monthly payments of $948, but Plaintiff was *already obligated to pay those amounts* (if not more) under the [original] Note."); *Grill*, 2011 WL 127891 at *8 ("Even if plaintiff had not paid the [trial] payments, he would have been obligated to pay the full amount of the mortgage").

## STATEMENT REGARDING COMPLIANCE WITH PRACTICE STANDARD III.F.2

Pursuant to this Court's Practice Standard III.F.2, Defendants Bank of America, N.A. and Urban Settlement Services met and conferred with Plaintiffs on August 5, 2013 regarding Defendants' anticipated motion to dismiss the complaint.  The parties discussed Defendants' position that Plaintiffs' fraud allegations were not pleaded with the particularity required by Rule 9(b) and that, separately, Plaintiffs' claims failed as a matter of law by virtue of, *inter alia*, binding Circuit precedent holding that a RICO enterprise cannot consist merely of the defendants to an action, nor of the defendants and their agents or employees.  On August 5, Plaintiffs informed Defendants that they would amend their complaint to address the issues raised by Defendants, and, pursuant to a stipulation between the parties, filed the currently operative amended complaint on August 26, 2013.  Based on Plaintiffs' failure to remedy the fatal defects brought to their attention during the August 5 meet and confer, Bank of America has filed this motion.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 16, 2013.

<u>/s/ Peter Korneffel</u>

#1659187